

ENTERED
04/07/2017

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| CYNTHIA COLE MARKOS; aka | § | CASE NO: 16-80385 |
| MARKOS; aka MARKOS; aka MARKOS | § | |
| Debtor(s) | § | |
| | § | CHAPTER 13 |

## MEMORANDUM OPINION

Cynthia Markos objects to Cheyenne Homeowner's Association's proof of claim in this case asserting that a portion of Cheyenne's claim is unsecured. The Court finds that attorney's fees are a cost of collection of assessments, and therefore are secured by the vendor's lien on Markos's property. Markos's objection is overruled.

### Jurisdiction

The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). This proceeding is a core proceeding under 28 U.S.C. § 157(b).

### Background

On August 26, 2016, summary judgment was entered against Cyntha Markos in favor of Cheyenne Homeowner's Association, Inc. in Texas County Court at Law No. 2 in Galveston County. Judgment was in the amount of $9,231.56 plus costs, interest, and additional attorney's fees in the event of appeal. (Claim Dkt. 1). On November 21, 2016, Markos filed a notice of appeal of the judgment. On December 2, 2016, Markos filed her voluntary petition under Chapter 13 of the Bankruptcy Code. Cheyenne filed a proof of claim in this case asserting that Markos owes a secured debt of $11,890.09, including home owner's assessments of $2,090.44, interest and charges of $507.53, and attorney's fees of $9,292.12. On February 2, 2017, Markos filed her objection to Cheyenne's proof of claim.

Markos neither disputes the amount of the claim nor its allocation between the three categories. Instead, Markos disputes the amount of the claim entitled to secured status. (ECF No. 30 at 2). Markos argues that under the governing document, attorney's fees are not secured by the lien on her property. Cheyenne argues that attorney's fees are a cost of collection of the assessments, and are therefore secured by the lien.

## Analysis

A restrictive covenant is any covenant, condition, or restriction contained in a dedicatory instrument, whether mandatory, prohibitive, permissive, or administrative. Tex. Prop. Code. Tit. 11. § 202.001(4). A dedicatory instrument is the document that sets forth, among other things, the bylaws, covenants, and rules governing the administration or operation of a property owners' association. *Id.* at 202.001(1)(A). It is undisputed that the restrictive covenants contained in the dedicatory instrument governing Markos's property require her to pay annual and special maintenance assessments. The assessments charged are secured by a lien on Markos's property. The covenant to pay maintenance assessments and the mechanism creating the lien are contained in Article IV, Section 1 of the Declaration of Covenants and Restrictions for Cheyenne:

> The Declarant, for each Lot within the Subdivision which shall be or thereafter become subject to the assessments hereinafter provided for, hereby covenants . . . to pay the Association the following: (a) Annual assessments or charges; and (b) Special assessments for capital improvements.
>
> Such assessments or charges are to be fixed, established and collected as hereinafter provided. These charges and assessments, together with such interest thereon and cost of collection thereof, as hereinafter provided, shall be a charge on the land and shall be secured by a continuing Vendor's Lien upon the Lot against which such assessments or charges are made. Each such assessment or charge, together with such interest, costs and reasonable attorney's fees shall also be and remain the personal obligation of the individual or individuals who owned the particular Lot at the time the assessment or charge fell due notwithstanding

any subsequent transfer of title to such Lot. Upon a transfer of a lot, the assessments accrued to the date of transfer must be paid in full.

(Claims Dkt. 1).

Under Texas law, restrictive covenants are subject to the same rules of construction and interpretation as contracts. *Sloan v. Owners Association of Westfield, Inc.*, 67 S.W.3d 401, 404 (Tex. App.—San Antonio 2005, no pet.). As with any contract, a court's primary duty is to examine the language of the restrictive covenant to determine the parties' intent. *See Wilmoth v. Wilcox,* 734 S.W.2d 656, 658 (Tex. 1987). Texas law is not entirely coherent regarding how courts should construe restrictive covenants. *See* David A. Johnson, *One Step Forward, Two Steps Back: Construction of Restrictive Covenants After the Implementation of Section 202.003 of the Texas Property Code*, 32 TEX. TECH L. REV. 355 (2001). However, Texas courts are in agreement that unambiguous restrictive covenants are entitled to liberal construction. *See* Tex. Prop. Code § 202.003(a) ("A restrictive covenant shall be liberally construed to give effect to its purposes and intent."); *see also Jennings v. Bindseil*, 258 S.W.3d 190, 194-95 (Tex. App.—Austin 2008, no pet.) ("When the language of a restrictive covenant is unambiguous, the Texas Property Code requires that the restrictive covenant be liberally construed to give effect to its purpose and intent.").

Markos cites this Court's Opinion in *In re Glaude* to support her position that attorney's fees are not secured by a lien on her property. 2012 WL 5381809 (S.D. Tex. Oct. 31, 2012). In *Glaude*, the Court found that attorney's fees were not covered by a home owner's association's vendor's lien that secured only "the payment of the annual maintenance charge and security assessment." *Id.* at *2. The Court concluded that because the language of the restrictive covenant creating the lien did not mention attorney's fees, they were not secured by the lien. *Id.*

There is an important difference between the language of the lien provision at issue in *Gloude* and the provision in this case. Cheyenne's vendor's lien covers (1) charges and assessments, (2) interest thereon, and (3) cost of collection thereof. (Claims Dkt. 1). The lien in *Gloude* secured only charges and assessments. 2012 WL 5381809 at *2. For that reason, *Gloude's* application is limited to the general principle that a vendor's lien secures no more than its formation language permits.

In addition to charges and assessments, the lien in this case secures interest and the cost of collection. Markos argues that because attorney's fees are not specifically enumerated, they are not secured by the lien. (ECF No. 30 at 4). Cheyenne argues that attorney's fees are costs of collection. For support, Cheyenne highlights a section of the covenant that makes the assessments, among other things, an unsecured personal liability of the property owner. The restrictive covenant states that "[e]ach such assessment or charge, together with such interest, costs and reasonable attorney's fees shall *also* be and remain the personal obligation of the individual or individuals who owned the particular Lot at the time the assessment or charge fell due." (Claims Dkt. 1) (emphasis added). The specific reference to attorney's fees absent from the lien creation language is present in the language imputing personal liability. Initially, this cuts in favor of a finding that attorney's fees are not secured by the lien. However, the covenant's inclusion of the word "also" indicates that these obligations—(i) assessments and charges, (ii) interest, and (iii) costs and reasonable attorney's fees—are secured by the lien *as well as* remain the personal obligation of the property owner. Giving effect to the word "also" compels the Court to find that attorney's fees are included in the cost of collecting assessments, charges, and interest thereon. If not, to what then does the word "also" refer?

In examining a restrictive covenant, the language used by the parties will be given its plain, ordinary and commonly-accepted meaning, unless do so will defeat the intention of the parties as clearly evidenced by other provisions of the instrument. *Travis Heights Improvement Ass'n v. Small*, 662 S.W.2d 406, 409 (Tex. App.—Austin 1983, no writ). The Court finds the restrictive covenant unambiguous. In order to collect the assessments and charges to which it is entitled, a homeowners association may be required to hire counsel to prosecute a collection lawsuit. It follows that the "cost" of counsel to pursue such a claim is a cost of collection. Moreover, the opposite conclusion would give no meaning to the word "also" in the sentence following the lien provision. The parties' intent can be discerned from the plain language used in the restrictive covenant.

Attorney's fees attributable to the collection of assessments, charges, and interest thereon are secured by Cheyenne's lien.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **April 6, 2017.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE